Good morning. I'd like to reserve one minute for rebuttal. I'm sorry to help you, but really, you need to watch it as closely as you can. May it please the Court. Justice Benjamin Cardozo once said, concerning the First Amendment freedoms, that they are the matrix and indeed a dispensable condition in nearly every other form of freedom. Pennsylvania was the first colony in the New World to recognize the right to decently assemble. In 1617, William Penn, the founder of that colony, was arrested in London for giving a sermon after he had been locked out of his church. London officials had forbidden him to preach in the church, so he took the sermon to the streets. He was charged with unlawful assembly and the discouragement to change his speech. Today, some 300 years later, Mr. Ray Allen is before this Court because some other city's officials have silenced voices and disrupted an unlawful, peaceful assembly. I'm calling for the legalization of cannabis. The closing of Public Park on April 20th. April 20th. I'm sorry. The 20th. The 20th. Yes. I think everybody seems to agree it was barred by limitations and an actual incident. Is that right? An actual incident was what? Barred by and in exchange for limitations. So we don't believe it was barred by the statute of limitations because there was self-censorship every year, and he did not find out he had a cause of action until 2014 when Kevin Stonemarker, a former police officer, disclosed to him that the city had had a five-year plan during the late event in 2009 to close the park. We believe the essence of the injury, Your Honor, is not simply it not being able to use the park, but it's not being able to use the park because the city acted to close the park because it did not like the viewpoints expressed by those people using the park. And that information was not available because the city conceded that it was a secret plan. It was a plan that was run by some of the city council members but was stopped in the subject of a formal city council meeting. It was a task force that met and arranged the plan. And when Mr. Allen was at the park in 2010, he was dealing with rank-and-file police officers. He had no idea there was this overarching plan, and as the court is aware, there was no— Mr. Knox, I'm trying to reconcile what you're arguing in our Knox case, which basically stands for the proposition that any negative consequences that flow from an isolated wrongful act are not separate actual injuries. So how do you reconcile that with what I believe is what you're arguing? Somehow it can constitute a basis to start a decline or keep decline going. So I think the argument is that there's no particular— you're not put on inquiry notice that there's something wrong. If you just have a suspicion or a feeling, you have to have facts. And if we had filed this case, let's say, in 2010, it would most likely have been dismissed because we didn't have the facts showing that there was a conspiracy by the higher-ups. We just had the rank-and-file. There's no respondeat superior in a 1983 action. So they're not responsible for what their rank-and-file officers do unless the policy makers are involved or unless there's a conspiracy. So there's no way, if Mr. Allen had filed the case in 2010, it would most likely have been dismissed under Iqbal and Plumlee for failure to sustain a claim. It was only in 2014 when we had the information from the former police officer. And I think the paragraph 12 of your complaint is pretty clear. I think that Mr. Allen was deterred from returning to the park based on the 2010 conduct of the defendants. So if we accept our law and turn back to the truth, I think we have to, with Mr. Allen's decision not to attend these 420 events, constitutes the negative consequences of the blows from that 2010 injury. Would that make his claim high barred? I submit to the court there's a separate injury that occurs every year on April 20th when they close the park. If we had been allowed to amend the complaint, we would have alleged that they advertised prior to April 20th that the park was going to be closed. So he suffered that injury every year on April 20th. By self-censoring, I'm going to the park, but it would have been a useless act because, hey, they advertised the park was closed, they closed the park. There were police there to enforce the closure. Would you submit that his self-censorship in not attending every year but relying on others' facts, as you said before, any facts, is the injury that continues year to year? Yes, exactly. But also constitutes a separate injury. Yes. Every year when they closed the park, there were hundreds if not thousands of people who did not come to the park because they knew police were going to be there to enforce the closure. That's what the city's purpose is. So can Allen engage in self-censorship if he can personally observe the efforts to block off Redwood Park? Is it enough that he heard about the official's efforts and he did not? Because you said he didn't go himself. He did not. And I think that if the court – I think he has to be because otherwise the city can close the park. That's one of our most protected freedoms under the First Amendment, core speech, core location. The right of the citizens to associate, seek redress of grievances in a public square or park. If he can't bring a suit, who can? Right. But there's part of the cloud that I need you to try to clarify. The entire park wasn't closed. Was it just the area that he wanted to be on? I'm happy to clarify that. So there's Redwood Park, which is a large, grassy area that can accommodate probably 3,000 to 4,000. That entire area is closed, and we do allege that as a complaint. But in 2010, what happened was people showed up and they were diverted to the adjacent community forest, which is a densely forested hillside, relatively steep with trails. There's no gathering place. It's not a place where people can gather. So a few people ended up on that hillside in 2010. But every year after that, they close the park. There's two parking lots where you can access the park, and then they close the gate across the roadway so people can drive in there. So your client maintains that there's no adequate alternative channel for him and others to express themselves because of this incursion? Absolutely, and if we had a chance to end the complaint, we could have added facts to allege that. There are some other places in Arcata, but they're not adequate. And this place was the place that, over, say, 20 to 25 years, that is a traditional gathering spot for this event. So I hear we serve the rest of your time. Yes, thank you. Before you go to the next level, on behalf of the police, the city of Arcata, of Mayor Mendoza, and Thomas Chapman, I wanted to address some of the points that the board raised with opponents and counselors a moment ago. I think this case falls squarely within that. And this is based on the court's notation of the paragraph 12 in the complaint. It very clearly states that as a result of the conduct that was observed by Mr. Allen in 2010, he made the decision right then and there that he's not going to return to those celebrations. It's not a circumstance where he was holding on a decision, which he's included later down the line. And he's excused by some article that happened in advance of, say, the 2012 event. In Jesus' complaint that he made the decision in 2010, that is the time when he sustained an injury, and everything thereafter is essentially an expanding or continuing injury, ongoing injury. It's not an injury that arises from a kneeling and from a violation of his rights. And I think that is 100% consistent with having certain authority in that regard. Your Honor, the reason why is because it's so affirmatively stated that that is why he made the decision. So for him to amend the complaint to assert that something else was supposed to, that would be inconsistent with his pleading. It looks like it's not necessarily fatal that he made the decision to say that due to inconsistency can be handled. Sir, Rule 11 asks that the consequences for violating Rule 11 be lifted. There's nothing in it that rules a civil procedure against inconsistent pleading. Well, I think, Your Honor, what we're trying to do here is assess what we have before us and what piece of the inconsistency comes from. I get your point. And the question, I guess, is whether the complaint can reasonably be lifted. And seeing that I am not going there because for him and 2010, and for no other reason, whether it can be deceived. The only reason why I'm not going is because it's 2010. Your Honor, I think it's an admission that he makes against pleading. He never sought to amend that admission. That is an admission that we're working with. And I think, ultimately, if the complaint were amended, that would be an admission that would continue. I think it would serve as an adjustment for a further motion. Because, again, I don't think it would be appropriate given how concise it is. I'm just stating your point. But what's your view on self-censorship? Isn't that competent sufficient to constitute an injury in a very understanding of the purposes? Well, the good is, in fact, there was some concrete plan to go forward with the client. You see, so the issue here is that he had a concrete plan to do exactly the opposite, to not go to the event. Well, but if he knew that the Redwood Park was going to be effectively closed to the 420 celebrants, that he would know that he doesn't need to go to the park because he'd be drunk, why isn't that a sufficient injury under our law? Well, you're on rising target rules, and we're not admitting this act, but arguably that would be a sufficient injury for the 2010 event. That's by far. He decided after that event and as a prompt to that event, I'm not going to go to any future events. Well, no. He's asserting in his brief, though, that he could, or that he would be alleging that because he heard from various sources different things that were happening, that that's the reason why he would not go in the later years. Why isn't that sufficient? Well, again, I go back to standards that are considered when you're looking at whether or not there's been a resilience act by virtue of some conduct or some act or some law, and, again, one of the critical factors, the first and the third factors, that there be a concrete plan that he's going to engage in the conduct which ultimately would lead to the violation of his rights, and he states that he would not do that because of that. And in addition, I think we add as well. I'm sorry. He states he would not do that because of that? What do you mean? Well, he states in his opinion, again, that he would not go to the later events because of what happened in 2010. And I apologize for being unclear. Excuse me, counsel. Didn't you also allege that it was the town's repetitive closure of the park that caused him to substance? I did not see that in the complaint. He says that's the essence of his allegations. That's not what I saw in the complaint. What I see in the complaint is that he's made the decision at that point that I'm not going to go to any further celebrations. And because they couldn't have them there because they kept changing the site, trimming the trees, whatever the allegation is that your client made, he did something on that day every year to discourage use of the park by his group. Well, I would agree that that was efforts that were done at the same time as the event, and the allegation is that that was done to discourage the event. In fact, Mr. Allen wasn't there to avail himself of the event. He chose not to go because of what he observed in 2010. So you do think that he had to be physically present himself and be turned away in order to have standing? I think if he were, he would have said in his complaint that what I saw in 2010 and later saw in other events, you know, later saw as he was planning to go for further improvement to future events, that may have created some kind of standing. I would submit there are issues with that as well. But the fact that he makes the decision in the concrete plan that I'm not going to go further is indicative of an injury that's occurred in 2010, not of reinforcement issues relative to standing. And the other thing I would like to mention in relation to standing is that the conduct that he observes in 2010, where there's alleged discriminatory enforcement of law and so forth, he was not subject to that conduct. He observed it happen. So in that sense, he was not even subject to the selective enforcement and the ability to make some torts and allegations. He said he could not be the emergency worker in the area? That's correct. And that's because the city did close that area off. But again, we would argue as we do in our brief that that in and of itself doesn't constitute a constitutional violation because a specific area of the park, the grassy area, where they wanted to do this celebration, had no constitutional significance. It doesn't like they were in front of a city hall and were forced off to the park, you know, the stand or something like that. And that goes to the merits. That goes to the substance. I mean, to your point, Tom, you just took the motion to dismiss the station. You're a witness to that. I mean, and by saying that, you keep it to the end result. I'm going to just go. You keep asserting a note and some docs regarding the 2010 and tying everything to the 2010. But in the briefing, Mr. Allen clarifies they're refraining from attending the Redwood Park 420 celebration after 2010, not just because the defendant's actions on April 20th, 2010, but also because additional allegations that Mr. Allen proposed in his brief were sufficient to establish that he suffered a concrete first amendment injury. And he said that in the following years, they started to restrict the trailer removal on the park on that day. They soaked the park with the shoe ultra-fertilizer on another year. And another year, they posted a sign saying, all marijuana laws are strictly in your force. And then also a sign that says no 420 celebration. He was made aware of that not from just this 2010 appearance that day. He was made aware of that subsequently. But I wanted to try to understand why this isn't self-censorship for these post-2010 years. Well, again, we're dealing with the allegations and the complaints. Yeah, I know. But we're also one of the issues. Ares, he's seeking to amend the complaint. He sought to do so. He was denied. What's your best argument in light of that, why the amendment of the complaint should not be amended? Well, as you can see, there's no information that he sought any of those news articles. There's no information that he sought. So, in his amendment, in his request to amend the complaint, he has to say that he saw those articles, he's made aware of them. You think that he has to show exactly how he was made aware of them? No. He's saying that those somehow lead to his decision not to go to later events, and that's the problem here. He alleges in his complaint that he chose in 2010 not to go to future events. He doesn't say that the articles were that. We're talking about that possible amendment complaint. And what I'm getting at, Your Honor, is that there's nothing that has been said in the briefing or otherwise that those news articles, and that the context of the case in 2012-2014, can forge his decision. Okay. Thank you very much. Thank you, Your Honor. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Well, as far as the enforcement is, it's not the guns fired by you that gets the closure of the park that we're very concerned about. Isn't there enough in the allegations of his disgust in what he saw in 2010 enough to put him as a reasonable person in his place, at least to notice that they were aiming at 2010 celebrations? I don't know. I'm trying to clarify. For 2018 celebrations. Well, I think there may have been smoke, but there was not fire, and I think it's a gray area, basically. I think he didn't know that the higher-ups in the city, the police chief and the city manager, and his working task group and the city council were all in on this. This was a bunch of police officers on the front lines basically saying, okay, this park is closed this year, and you can go up in the community boards. And so that's all we really had at that point. I'd like to say that this is not just about him. This is about thousands of other people whose rights to use that park and to express their disagreement with humans prohibition have been jilted on the city's action. And I would urge the court to consider fruit parties this evening so that those people can have a voice. Thank you. Thank you both for your arguments here today. It was remarkable. Mr. Conville, I appreciate it very much. As a matter of how long the purchase of City of Arcata is submitted.
judges: Canby, Murguia, Rufe